UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In Re:

MICHAEL J. DRANICHAK,                                  Chapter 7
                                                       Case No.: 10-63042

                                      Debtor.
_____

In Re:

RICHARD G. ROSETTI and PLAZA 7, LLC,                   Adv. Pro. No.: 10-80059

                                      Plaintiffs,

vs.

MICHAEL J. DRANICHAK,

                                      Defendant.
_____

APPEARANCES:

McNAMEE, LOCHNER, TITUS & WILLIAMS, P.C.           KENNETH L. GELLHAUS, ESQ.
*Attorneys for Plaintiffs*
677 Broadway
Albany, New York 12207-2503

EHRLICH & ARCODIA, PC                              MARC S. EHRLICH, ESQ.
*Attorneys for Debtor-Defendant*
64 Second Street
Troy, New York 12180

Honorable Diane Davis, United States Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

      Judgment creditors Richard G. Rosetti and Plaza 7, LLC ("Plaintiffs") initiated this adversary proceeding on October 12, 2010, by filing an adversary complaint (ECF Adv. No. 1), which Plaintiffs amended on December 15, 2010 (the "Amended Complaint," ECF Adv. No. 17), seeking to deny Debtor Michael J. Dranichak ("Debtor") his discharge under 11 U.S.C. §

727(a)(4)(A) and (B).[1]   Debtor filed an Answer to the Amended Complaint on January 4, 2011 (ECF Adv. No. 18), therein denying the material allegations and requesting dismissal of the Amended Complaint.  The matter came to trial on January 31, 2012, and Plaintiffs and Debtor submitted post-trial briefs on March 30, 2012 (ECF Adv. Nos. 42 and 43, respectively).  For the reasons set forth below, the Court having considered all the pleadings, the evidence adduced at trial, and the parties' written closing arguments, the Court finds in favor of Debtor and dismisses Plaintiffs' claims seeking to bar Debtor's discharge.  As is required by Federal Rule of Civil Procedure 52, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052, this Memorandum-Decision and Order sets forth the Court's findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction to entertain this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1).  This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(J).

## FACTS

On July 7, 2010, Debtor filed this Chapter 7 case by submitting a completed Voluntary Petition, Schedules, Declaration Concerning Debtor's Schedules ("Declaration"), Statement of Financial Affairs ("SOFA"), and Form B22A ("Means Test") (collectively, the "Petition," Pls.' Ex. 1).  On Schedule F, titled "Creditors Holding Unsecured Nonpriority Claims," Debtor listed a business debt due and owing to Plaintiffs in the amount of $115,218.00, which Debtor indicated under Question 4 of his SOFA, titled "Suits and administrative proceedings, executions, garnishments and attachments," arose as a result of a pre-petition judgment rendered in New York State Supreme Court.  According to the parties' Joint Stipulation as to Uncontested

---

[1] All further section references herein are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2010).

Facts for Trial filed on January 20, 2012 ("Joint Stipulation," ECF Adv. No. 36), Plaintiffs obtained a Judgment against Debtor on June 19, 2006, in the amount of $109,060.00 (Joint Stip. ¶ 2). In response to Debtor's bankruptcy filing, Plaintiffs commenced this proceeding by filing the adversary complaint putting Debtor on notice of their belief that Debtor's Petition was false and misleading based upon their comparison of the information included in the Petition with information they had obtained during the course of post-judgment collection proceedings.

The sole witness at trial was Debtor, who was initially called as an adverse witness by Plaintiffs. In addition to the Joint Stipulation, the testimony and documents submitted into evidence revealed the following:

1. Debtor testified that he earned an undergraduate degree in economics from St. Lawrence University and that he completed some post-graduate courses at Rensselaer Polytechnic Institute. (Trial Tr. 7, Jan. 31, 2012, ECF Adv. No. 40.)

2. Beginning in 1992, Debtor was employed by Crellin International, now Sunoco-Crellin International, an injection molding company for which Debtor's father, Michael Dranichak, Jr., then served as President and Chief Executive Officer. (Trial Tr. 7–8, 77.)

3. Beginning in 1992, Debtor was also an employee and owner of the Colony Athletic Club ("CAC"), which filed for bankruptcy in 1997. (Trial Tr. 9.)

4. Following CAC's bankruptcy, Debtor began working for 5672 Main Street, Inc. ("5672 Main"), a fitness club owned by Debtor's father as the sole shareholder. (*See* 2005 U.S. Income Tax Return for an S Corporation, Pls.' Ex. 25; Trial Tr. 9.)

5. From 2000 to 2006, Debtor was the general manager of 5672 Main. (Joint Stip. ¶ 3.) Debtor testified that 5672 Main eventually "shut down" after losing money "year after year" in the competitive gym business. (Trial Tr. 12.)

6.      From 2005 to 2007, Debtor was the general manager of a business known as Arizona Fitness, LLC.  (Joint Stip. ¶ 4.)

7.      As the general manager and/or employee of 5672 Main and Arizona Fitness, LLC, Debtor personally guaranteed certain loans made to these companies.  (Joint Stip. ¶ 15.)

8.      Debtor's Schedule F lists total unsecured debt in the amount of $988,529.65, all of which is classified as business debt.  (Pls.' Ex. 1.)  Debtor testified that the aggregate unsecured liability listed in his Petition, including that owed to Plaintiffs, results from personal guarantees that he signed during his operation and oversight of 5276 Main and/or Arizona Fitness, LLC.  (Trial Tr. 19–24.)

9.      According to Debtor's Schedule F and his testimony, Debtor owes approximately $300,000.00 to his father as a result of personally guaranteeing certain loans made by his father either to him directly or to CAC, 5672 Main, and/or Arizona Fitness, LLC.  (Pls.' Ex. 1; Trial Tr. 124–26; Joint Stip. ¶ 17.)

10.     From 2008 through the date of filing, Debtor earned income from an unincorporated sole proprietorship that provided handyman services, lawn mowing services, and snow removal services in the Capital Region.  (Joint Stip. ¶ 5.)

11.     Debtor's Schedule I, titled "Current Income of Individual Debtor(s)," lists his occupation for the past three years as a self-employed general handyman.  It also lists the occupation of his non-filing spouse, Lynda Dranichak ("Lynda"), as a homemaker.  Debtor and Lynda's monthly gross wages on both Schedule I and the Means Test are listed as $2,300.00 and $533.00, respectively.  Their combined average monthly expenses are listed on Schedule J, titled "Current Expenditures of Individual Debtor(s)," as $2,273.00.  Under Question 1 of the SOFA, titled "Income from employment or operation of business," Debtor lists his 2008 income from

his home repair, lawn mowing, and snow removal business as $24,000.00, and his 2009 income from the same business as $27,595.00.

12.    Debtor and Lynda filed joint federal and state tax returns for tax years 2008 (Pls.' Ex. 2), 2009 (Pls.' Ex. 3), and 2010 (Pls.' Ex. 4).

13.    The principal source of earned income for Debtor's household in 2009, as reported at line 22 of Debtor and Lynda's 2009 tax return, was Debtor's business. (Joint Stip. ¶ 29; Pls.' Ex. 3.) Also as reported on Debtor and Lynda's 2009 tax return, Debtor received $3,405.00 from TL Metzger & Associates ("Metzger") (Joint Stip. ¶ 31; Pls.' Ex. 3) and $3,400.00 from Amdiraddo, LLC ("Amdiraddo") (Joint Stip. ¶ 32.) Debtor did not separately report these sums on his SOFA. (Joint Stip. ¶¶ 31–32.) Debtor testified that he obtained a real estate license in 2008, but that he did not earn any income as a real estate agent and, thus, did not include reference to the same in his Petition. (Trial Tr. 72–73.) Debtor attributed the income from Metzger to janitorial and snow plowing work that he performed at the owner's personal residence and at the commercial property. (Trial Tr. 55, 94–95.) Debtor also testified that he was never employed by Amdiraddo but that he did some light contracting and outdoor maintenance work for the company and it mistakenly included him on the regular payroll causing a W-2 to be issued for Debtor from the company for tax year 2009. (Trial Tr. 94.)

14.    In contrast to the Petition, Debtor's 2008 tax return lists on Schedule C, titled "Profit or Loss From Business," for tax year 2008 gross receipts in the amount of $30,423.00 and gross income in the amount of $24,389.00 (Pls.' Ex. 2), and his 2009 tax return lists on Schedule C for tax year 2009 gross receipts in the amount of $48,776.00 and gross income in the amount of $38,607.00 (Pls.' Ex. 3). In harmony with the figures listed in Debtor's Petition, Debtor's 2008 tax return lists on Schedule C a net profit for tax year 2008 in the amount of $24,389.00

(Pls.' Ex. 2), and his 2009 tax return lists on Schedule C a net profit for tax year 2009 in the amount of $27,595.00 (Pls.' Ex. 3).

15. Debtor's Schedule A, titled "Real Property," lists no real property owned by Debtor. Debtor's Schedule J, however, lists a monthly home mortgage payment in the amount of $1,646.00, combined monthly utility expenses in the amount of $250.00, and monthly real property taxes in the amount of $420.00. Similarly, Debtor's Schedule B, titled "Personal Property," does not list an automobile, but his Schedule J lists a monthly expense of $575.00 for Lynda's car payment. Debtor testified that he included estimates on Schedule J of his household expenses notwithstanding that the actual title to the subject real and personal property corresponding to those expenses was in Lynda's name only. (Trial Tr. 42.) Debtor further testified that he believes Lynda pays those household expenses using money that he gives her from the operation of his business. (Trial Tr. 42.)

16. Debtor testified that he has not maintained a bank account in his own name since 2008 (Joint Stip. ¶ 7), and that he has since that time turned cash payments and all checks tendered to him by his customers over to Lynda (Joint Stip. ¶ 8; Trial Tr. 31). Debtor further testified that from the funds collected, Lynda would pay household bills, including a "tremendous amount of credit card debt." (Trial Tr. 30.)

17. Lynda maintained a checking account at Trustco Bank, NA during 2008 and into 2009, into which she deposited all checks given to her by Debtor. (Joint Stip. ¶ 9.) From November 2008 through December 2011, Lynda maintained a checking account at First Niagara, into which she deposited all checks given to her by Debtor. (Joint Stip. ¶ 10.)

18. The sum total of deposits into Lynda's bank accounts for 2008 attributable to checks and cash paid to Debtor by customers exceeded $24,000.00 (Joint Stip. ¶ 24), the amount listed on Debtor's SOFA for that same time period (Pls.' Ex. 1).

19. The sum total of deposits into Lynda's bank account for 2009 attributable to checks and cash paid to Debtor by customers exceeded $28,000.00 (Joint Stip. ¶ 25), the amount listed on Debtor's SOFA for that same time period (Pls.' Ex. 1).

20. When asked how he arrived at the figures included in his Petition, Debtor responded that he consulted his tax returns (Trial Tr. 17–18), and with respect to income specifically, that he estimated the number of lawns mowed on a weekly basis and "extrapolated those [numbers] forward." (Trial Tr. 28.) He also consulted his customer list. (Trial Tr. at 29). He did not, however, review Lynda's check registers or bank records. (Trial Tr. 17.)

21. At numerous points during his testimony, Debtor stated that he either worked for his father's companies or that he and his family received financial support and assistance from his parents. In addition to supporting Debtor's failed business ventures in the gym industry, Debtor testified on multiple occasions that his parents have financially supported his family since the arrival of Debtor's three children, who were at the time of filing ages 6, 8, and 10. The parental support included, but was not limited to, gifting of Debtor's residence to Lynda nearly a decade ago (Trial Tr. 36, 100), signing over a returned deposit from Niagara Mohawk from one of the failed fitness companies to Lynda (Trial Tr. 109), and endorsing and turning over his father's Social Security checks to Lynda on occasion (Trial Tr. 110).

22. Debtor further alluded to his father having literally "bail[ed] [him] out" in the face of financial and business mistakes. (Trial Tr. 78.) Moreover, Debtor testified that his father

currently owns the automobile that Debtor drives and that he sometimes pays for gas for the vehicle. (Trial Tr. 41.)

## ARGUMENTS

Plaintiffs contend that they have proven their case through both intentional misstatements and omissions within Debtor's Petition. Plaintiffs' main argument is that Debtor has significantly understated his gross income on the SOFA. (Pls.' Post-Trial Mem. of Law 9–12.) Plaintiffs arrived at this conclusion by reviewing the deposit history of Lynda's checking accounts for calendar years 2008, 2009, and 2010, arguing that the total deposits attributable to checks payable to Debtor from his business customers greatly exceed the amounts shown on Debtor's SOFA and on his joint state and federal tax returns. Further, Plaintiffs argue that Debtor fraudulently misstated his expenses on Schedule J because he does not actually make some of the monthly payments, including the mortgage and real property tax payments, the payment attributable to transportation, and the payment for Lynda's vehicle. (Pls.' Post-Trial Mem. of Law 13.) Plaintiffs also contend that Debtor failed to disclose under Question 7 of his SOFA, titled "Gifts," monetary gifts to Lynda of all monies earned by Debtor through his business. (Pls.' Post-Trial Mem. of Law 13–14.) According to Plaintiffs, this "unique financial arrangement . . . is tantamount to a self-settled trust, in which his wife is the Trustee of his income." (Pls.' Post-Trial Mem. of Law 14.) Plaintiffs aver that these alleged misstatements and omissions are material because they relate to the discovery of possible assets and to the financial workings of Debtor's household, as well as to the operation of Debtor's business. Pls.' Post-Trial Mem. of Law.)

As to Debtor's state of mind, Plaintiffs ask this Court to conclude, at a minimum, that Debtor has exhibited a cavalier and reckless disregard for the truth in this case. (Pls.' Post-Trial

Mem. of Law 20–23.)  In support of this argument, Plaintiffs point to Debtor's testimony when asked if he read the Petition that he "probably glanced through [the Petition]," which he supplemented by explaining that "[he] went over some of the pages with his [attorney], but there [was] a lot of stuff [in the Petition] that quite honestly it wouldn't matter if [he] read it or not [because he] wouldn't understand it."  (Trial Tr. 16.)  According to Plaintiffs, Debtor's "questionable concern for the accuracy of his filing" (Pls.' Post-Trial Mem. of Law at 21), coupled with the many defects in his Petition, evidence a pattern of misleading conduct sufficient to deny Debtor's discharge under § 727(a)(4)(A). (Pls.' Post-Trial Mem. of Law 23.)

Moreover, Plaintiffs presented additional facts that, although irrelevant to the dispositive question of a false oath, account, or claim, seek to shatter Debtor's credibility and reveal a "tale a debt avoidance and deception that runs rampant through the storyline of [Debtor's] business and professional life."  (Pls.' Post-Trial Mem. of Law 18.)  As a highly educated, sophisticated businessman who testified that he was recently elected as the chairman of his church finance committee (Trial Tr. 115) and who is familiar with the bankruptcy process, Plaintiffs proffer that much of Debtor's testimony simply cannot be believed.

Debtor disputes Plaintiffs' contention that he knowingly and fraudulently made any material misstatements or omissions in his Petition.  Specifically, Debtor argues that even if he disclosed net rather than gross income on his SOFA, Schedule I, and Means Test, this discrepancy is not sufficient to bar his discharge under § 727(a)(4)(A).  (Debtor's Post-Trial Mem. of Law 9.)  According to Debtor, even if his income figures were recalculated by disregarding Debtor's business expenses and deeming all of the questioned deposits into Lynda's checking accounts as income, Debtor and his family would still be substantially under-median and thus qualify for a Chapter 7 discharge.  (Debtor's Post-Trial Mem. of Law 9.)  Thus, any

such error in Debtor's Petition, if corrected, would not lead to assets or income for the benefit of Debtor's creditors. (Debtor's Post-Trial Mem. of Law 10.) Debtor insists that he did not conceal assets or his actual financial condition (Debtor's Post-Trial Mem. of Law 11) or make a false oath in connection with his bankruptcy case (Debtor's Post-Trial Mem. of Law 12). Rather, he accuses Plaintiffs of making a series of incorrect and irrelevant accusations against him for the purpose of "delay[ing] the administration of a simple case" in order to attempt to collect a six-year old deficiency judgment for lease arrears arising out of a lease obligation for either 5672 Main or Arizona Fitness, LLC that Debtor personally guaranteed notwithstanding his lack of ownership in either company. (Debtor's Post-Trial Mem. of Law 13).

## DISCUSSION

### I. Discharge Generally

Because denial of a discharge is an "extreme penalty," *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996), "the law carries a 'presumption' in favor of the debtor in discharge contests," *Cadlerock Joint Venture II, L.P. v. Salinardi (In re Salinardi)*, 304 B.R. 54, 58 (Bankr. D. Conn. 2004). "This debtor-inclination derives from the observation that the denial of a discharge 'imposes an extreme penalty for wrongdoing.'" *Id.* (quoting *In re Chalasani*, 92 F.3d at 1310). Thus, objections to discharge must be strictly construed against the objectant and liberally construed in favor of the debtor. *In re Chalasani*, 92 F.3d at 1310.

The plaintiff bears the burden of proof in an adversary proceeding objecting to the granting of a discharge. Fed. R. Bankr. P. 4005. The applicable standard of proof is the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Scheidelman v. Henderson (In re Henderson)*, 423 B.R. 598, 616 (Bankr. N.D.N.Y. 2010) (collecting cases).

"'Once sufficient evidence is presented by the plaintiff to satisfy the burden of going forward with the evidence, the burden thereafter shifts to the debtor to provide evidence to rebut plaintiff's prima facie case.'" *Stattler v. Shallow (In re Shallow)*, 367 B.R. 48, 53 (Bankr. D. Conn. 2007) (quoting *PaineWebber Inc. v. Gollomp (In re Gollomp)*, 198 B.R. 433, 440 (S.D.N.Y. 1996)). The plaintiff, however, always bears the ultimate burden of persuasion at trial. Fed. R. Bankr. P. 4005; *In re Salinardi*, 304 B.R. at 58.

## II.     Denial of Discharge under Section 727(a)(4)

### A.    Subsection (a)(4)(A) – False Oath or Account

A debtor will be denied a discharge under § 727(a)(4)(A) when he "knowingly and fraudulently" makes a false oath or account in connection with the bankruptcy case. The purpose of this section is to ensure that debtors provide reliable information to those with an interest in the administration of the case. *In re Krich*, 97 B.R. 919, 923 (Bankr. N.D. Ill. 1988). It is well-established that to prevail on an objection under this subsection, the plaintiff must prove the following elements: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Henderson*, 423 B.R. at 618 (citing *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228 (E.D.N.Y. 2000) (citing *Dubrowsky v. Estate of Pearlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000))).

Given this standard, § 727 cases are necessarily fact dependent. It is well-settled that "[a] debtor's petition, schedules, statement of financial affairs, statements made at a § 341 meeting, testimony given at a Federal Rule of Bankruptcy 2004 examination, and answers to interrogatories all constitute statements under oath for purposes of § 727(a)(4)(A)." *Structured*

*Asset Servs., L.L.C. v. Self (In re Self),* 325 B.R. 224, 225 (Bankr. N.D. Ill. 2005) (collecting cases). Whether or not a statement is false and whether or not the debtor knew of the false statement is readily ascertainable. Case law applying § 727(a)(4) therefore primarily focuses on the fourth and fifth elements, thus making the outcome turn in the first instance on whether the plaintiff has demonstrated that the debtor acted with the requisite fraudulent intent. "Intent is the foundation of an action which is 'knowing and fraudulent.'" *Nickless v. Lipp (In re Lipp)*, 2009 Bankr. LEXIS 1955, at *11 (Bankr. D. Mass. July 6, 2009) (citing cases).

For purposes of § 727(a)(4), "[f]raudulent intent must be shown by actual, not constructive fraud," *In re Dubrowsky*, 244 B.R. at 571–72 (citing *In re Kelly*, 135 B.R. 459, 461 (Bankr. S.D.N.Y. 1992) (internal citations omitted)), although a "reckless indifference to the truth" also suffices, *Baron v. Klutchko (In re Klutchko)*, 338 B.R. 554, 567 (Bankr. S.D.N.Y. 2005) (citing cases). Thus, the plaintiff must show "that the information was omitted [or misrepresented] for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions . . . ." *In re Dubrowsky*, 244 B.R. at 571–72 (citations omitted).

"In the absence of an express admission of fraudulent intent, the plaintiff may "rely on references to circumstantial evidence, including the debtor's conduct and all of the facts and circumstances of the case, and a pattern of reckless indifference to or disregard for the truth [to] support an inference of fraudulent intent." *Tese-Milner v. Moon (In re Moon)*, 385 B.R. 541, 559 (Bankr. S.D.N.Y. 2008) (citing *Sicherman v. Rivera (In re Rivera)*, 2007 Bankr. LEXIS 26, at *5 (B.A.P. 6th Cir. Jan. 11, 2007); *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1584 n.4 (2d Cir. 1983)); *accord O'Neal v. DePriest (In re DePriest)*, 414 B.R. 518, 522 (Bankr. W.D. Miss. 2009) (Because fraud is rarely established by omission, it may be inferred from all the

Case 10-80059-6-dd    Doc 45    Filed 06/20/12    Entered 06/20/12 11:26:24    Desc Main
Document    Page 13 of 20

13

surrounding circumstances or implied from the debtor's recklessness.). In determining whether an inference of fraud arises, the court's "'focus is on whether the debtor's actions appear so inconsistent with his self-serving statement of [honest] intent that the proof leads the court to disbelieve the debtor.'" *In re DePriest*, 414 B.R. at 522 (quoting *Fokkena v. Klages (In re Klages)*, 381 B.R. 550, 554 (B.A.P. 8th Cir. 2008) (citing *Miller v. Kasden (In re Kasden)*, 209 B.R. 239, 244 (B.A.P. 8th Cir. 1997))).

In response to a discharge objection predicated on § 727(a)(4)(A), the debtor may not simply argue that he lacked the intent to deceive because he did not read the petition and accompanying documents and, hence, could not knowingly have attested to a false oath contained therein. *Bohm v. Dolata (In re Dolata)*, 306 B.R. 97, 149 (Bankr. W.D. Pa. 1994) (explaining that if a debtor fails to read his petition or accompanying documents but nevertheless signs the declaration therein that he has done so, then such debtor has, at a minimum, uttered a false oath for purposes of § 727(a)(4)(A) in the form of the declaration). Rather, the debtor must comport with the "'paramount duty to carefully consider the questions posed on the petition, schedules, and statements and to verify that all information listed is correct.'" *Neary v. Cline (In re Cline)*, 2010 Bankr. LEXIS 3548, at *13 (Bankr. N.D. Tex. Oct. 6, 2010) (quoting *Benchmark Bank v. Crumley (In re Crumley)*, 428 B.R. 349, 367 (Bankr. N.D. Tex. 2010)).

Unlike the issue of intent, the issue of materiality is straightforward. "The threshold of materiality is relatively low: "'a false oath is material, and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate or concerns the discovery of assets, business dealings or the existence or disposition of his property.'" *O'Connell v. DeMartino (In re DeMartino)*, 448 B.R. 122, 129 (Bankr. E.D.N.Y. 2011) (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984)).

In the present case, the issue of whether Debtor made a false oath is somewhat confusing. Debtor believes Plaintiffs' main allegation of a false oath is that Debtor underreported his income by reporting his net business income after deducting business expenses rather than his gross business revenue before deducting normal and ongoing business expenses. (Debtor's Post-Trial Memo. 4.)  The Court, however, believes Plaintiffs' accusation is more significant in that Plaintiffs allege that Debtor underreported his gross income by thousands of dollars based upon his failure to account for numerous payments from customers that were deposited into Lynda's checking accounts. (Pls.' Post-Trial Memo. 4–5.)  Following Plaintiffs' accusation of a false oath regarding income, Plaintiffs' most severe accusation in the false oath category is that Debtor included allegedly fictitious expenses on Schedule J.  The Court will address each charge in turn.

In the Court's view, the inquiry of whether Debtor made a false oath with respect to income is twofold: first, did Debtor make a false oath by reporting net rather than gross income?; second, did Debtor make a false oath by failing to account for all customer payments in his income figures?  As to the first question, it appears that the gross income figures disclosed for 2008 and 2009 were inaccurate.  As to the second question, absent testimony from Lynda, in light of Debtor's testimony that his father financially supported his family and often made cash gifts to Lynda, the Court cannot determine with certainty exactly what deposits were attributable to Debtor's business and, hence, by what amount, if any, his gross income was understated. Accordingly, for purposes of this Memorandum-Decision and Order, the Court finds that Plaintiff has established at least one false oath in the form of erroneous gross income figures within his Petition.

With respect to Debtor's expenses, this allegation of a false oath is meritless.  "The amount a debtor is required to disclose is not the amount . . . actually paid or made, but the

'average or projected monthly expenses' of the debtor at the time of the petition." *In re Malek*, 2010 Bankr. LEXIS 2591, at *8 (Bankr. N.D. Ca. Aug. 6, 2010). Debtor included on Schedule J the estimated normal household expenses for his family of five. Plaintiff has made no showing that these estimates were erroneous.

Turning to the dispositive elements set forth above, however, the record does not support a finding of concealment and nondisclosure by Debtor. While this Court recognizes that a debtor's petition and all accompanying documents should be prepared with scrupulous accuracy, the test to bar a discharge focuses not on the precise accuracy of the filing but rather on the veracity and willingness of the debtor to make a full disclosure. *Britton Motor Service, Inc. v. Krich (In re Krich)*, 97 B.R. 919, 924 (Bankr. N.D. Ill. 1988). A debtor's loss of the discharge under § 727(a)(4)(A) occurs only when information is omitted "knowingly and fraudulently." 11 U.S.C. § 727(a)(4).

"As used in § 727(a)(4)(A), the term 'knowing' means that the debtor had a present awareness that the statement was untrue, and 'fraudulent' means that the debtor harbored an intent to deceive, such as an intent to hide assets or the true value of assets or to prevent discovery of transfers of property." *First Capital Bank v. Thomas (In re Thomas)*, 2004 Bankr. LEXIS 783, at *9 (Bankr. C.D. Ill. June 10, 2004) (citing *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249 (4th Cir. 1987)); *accord Philadelphia Inquirer v. Burnley (In re Burnley)*, 1999 Bankr. LEXIS 1164, *10 (Bankr. E.D. Pa. Aug. 27, 1999) (Knowledge for purposes of § 727(a)(4) "'may be shown by demonstrating that the debtor knew the truth, but nonetheless failed to give the information or gave contradictory information.'") (quoting *Hamo v. Wilson*, 233 B.R. 718, 724 (6th Cir. B.A.P. 1999)). Inaccurate statements due to inadvertence, an honest mistake, or carelessness, without more, do not warrant denial of discharge. *Id.*

The ultimate determination of Debtor's entitlement to discharge turns on whether Debtor harbored the requisite fraudulent intent.  Debtor testified that he neither reviewed Lynda's checkbook register nor consulted any accounting books and records maintained in connection with his business prior to completing his Petition. (Tr. at 17.)  Rather, he reviewed his joint tax returns, from which the income figures in his Petition were derived.  Debtor was not questioned about the methodology that he or his accountant used to determine his taxable income for the calendar years immediately preceding his filing.  Further, based upon Debtor's testimony, which the Court found to be transparent and consistent with the evidence presented, including, but not limited to, Debtor's tax returns, it appears that Debtor attempted to and believed he had in fact accurately disclosed his income.  Even if he suspected that the gross income figures were erroneous, which is also plausible given Debtor's admittedly lackadaisical accounting and bookkeeping practices, there is no indication that he was operating under a plan to mislead anyone, or to what end he might have made the attempt. *See In re Malek,* 2010 Bankr. LEXIS 2591, at *7.

In this Court's view, Plaintiffs' most promising, though still unconvincing, argument in support of their § 727(a)(4)(A) claim is that Debtor acted with a reckless indifference to or disregard for the truth so as to raise an inference of fraud.  The Court has carefully considered Debtor's testimony concerning his pre-filing Petition review as well as the familiar body of case law cited by Plaintiffs for the proposition that a debtor's failure to read or carefully review his petition prior to filing constitutes a reckless disregard for the truth as a matter of law.  *See, e.g., Desiderio v. Parikh (In re Parikh)*, 456 B.R. 1, 33 (Bankr. E.D.N.Y. 2011).  Plaintiffs' argument in this respect, however, fails for two reasons.  First, this is not a case where Debtor's Petition contains more or almost more false information and omissions than it does accurate and true

information. *See, e.g., In re Burnley,* 1999 Bankr. LEXIS 1164, at *20–21 ("When, as in this case, the debtor's schedules contain more or almost more false information and omissions than they do accurate and true information, I think the only conclusion that can be reached is that the false statements are material to the bankruptcy case."). Second, although the Court agrees that Debtor is not the run-of-the-mill Chapter 7 debtor who unexpectedly finds himself before this Court, the record as a whole compels the Court to find that Debtor did not exhibit an utter indifference or carelessness as to whether the representations in his Petition were true or false. *See, e.g., Pergament v. Smorto (In re Smorto)*, 2008 U.S. Dist. LEXIS 19235, at *29 (E.D.N.Y. Mar. 12, 2008) ("[A]lleged inaccuracies and misrepresentations should not simply be examined in isolation when determining whether the Debtor acted with fraudulent intent or with reckless indifference to the truth, but rather should also be examined collectively in conjunction with the other evidence before the Bankruptcy Court.").

This finding hinges in large part upon the Court's underlying determination of Debtor's credibility, which in turn requires some explanation. The Court judged the credibility of Debtor through his demeanor, tone of voice, and the consistency of his testimony. While at times he appeared tired of Plaintiffs' pursuit and questioning, referring to them at one point as particularly aggressive creditors (Trial Tr. 60), his tone of voice was steady, his demeanor unchanged, and his testimony responsive, direct, and transparent. Although the Court took pause at Debtor's initial response to the question of whether he read the Petition prior to signing it, Debtor appeared during his direct testimony to be intimately familiar with the contents of the Petition. He did not, as other debtors have done, feign ignorance of the Petition's contents in order to disclaim all responsibility for statements made therein. *See, e.g., In re Tully*, 818 F.2d 106, 111

(1st Cir. 1987) ("A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath.").

  *B. Subsection (a)(4)(B) – False Claim*

A debtor will be denied a discharge under § 727(a)(4)(B) when he "knowingly and fraudulently" presents or uses a false claim in connection with the bankruptcy case. As this Court previously observed, "[t]his provision of the Code is sparsely used." *In re Henderson*, 423 B.R. at 619 (citing *Hendon v. Oody (In re Oody)*, 249 B.R. 482, 487 (Bankr. E.D. Tenn. 2000) (observing that there is little case law addressing this type of claim). The existing cases on this type of objection to discharge generally involve the scheduling of non-existent debts, the scheduling of inflated debts, or the filing by the debtor of a false proof of claim. *Id.* (collecting cases). As is true of a claim under § 727(a)(4)(A), a claim under § 727(a)(4)(B) also requires both intentionality and materiality. *Id.* (citing *Perniciaro v. Natale (In re Natale)*, 136 B.R. 344, 349 (Bankr. E.D.N.Y. 1992)).

Given the Court's prior findings regarding intentionality, Plaintiffs cannot maintain this § 727(a)(2)(B) claim. Even in the absence of such findings, however, Plaintiffs would not prevail. Plaintiffs complain that Debtor listed numerous business debts arising out of personal guarantees that he now owes to business creditors and to his father. As to the first category of debt, however, the parties have stipulated that Debtor personally guaranteed certain loans made to 5672 Main and to Arizona Fitness, LLC. The Court, therefore, will look no further. As to the second category of debt–that owed to his father–it is entirely plausible that Debtor, who admittedly conducted his business affairs in the loosest way possible, believes that he does in fact owe this debt to his father. While the Court certainly does not condone Debtor's poor business practices or recordkeeping, it cannot ascertain any improper benefit to Debtor for

having included this debt on Schedule F. *Compare, e.g., Pigott v. Cline (In re Cline)*, 48 B.R. 581, 585 (Bankr. E.D. Tenn. 1985) (The court denied the debtors' discharge under § 727(a)(4)(B) where it found that the overstatement of a secured claim was a material falsity because it created "a mistaken belief that the liens against the debtors' residence exceeded its fair market value by $25,000.00.")

## CONCLUSION

The strict application of the well-established general evidentiary standards under § 727 and the specific legal standards under the relevant subsections of § 727(a)(4) to the facts and circumstances of this case result in an uneasy decision for the Court. On the one hand, the bankruptcy discharge is a privilege intended to be reserved "only to debtors who conduct their affairs with honesty and openness," *In re Salinardi*, 304 B.R. at 58, but on the other hand, given that "the law carries a 'presumption' in favor of the debtor in discharge contests," *id.*, an unconscionable debtor may on occasion ultimately prevail in obtaining a fresh start. Such is the case here.

This case presents an uncharacteristic Debtor who admitted that "he knew someday [he] was going to go bankrupt." (Trial Tr. 60.) The Court's assessment is that Debtor is honest but not unfortunate; he is unrestrained and irresponsible in his dealings with creditors but not fraudulent; and, perhaps most troubling, he appears to be unwilling and unlikely to change his ways. Debtor has carefully and purposefully averted ownership of or relinquished control over virtually all of his assets, including his residence and income, and thereby effectively thwarted the collection efforts of Plaintiffs, while simultaneously he has enjoyed the generous business and financial support of his father and the easy lifestyle that such support affords. Despite his

education and apparent ability, he seems content to continue his admitted financial dependency on his parents.

A general discharge under the facts and circumstances laid bare here surely cannot be what the Code intended, but the Court is bound to apply the law as it finds it. Plaintiffs presented two claims under § 727(a)(4), for which they have failed to carry their burden of proof. While the Court is left with an unfavorable impression of Debtor as a financially irresponsible individual, it is unconvinced that Debtor's actions to ensure that he is judgment proof rise to the level of fraud necessary to warrant a denial of his discharge. In fairness to Debtor, Plaintiffs' business decision to accept a personal guarantee from an individual who, at the time of making the personal guarantee, held no assets in his own name is also highly questionable.

For the foregoing reasons, it is hereby

ORDERED, that Plaintiff's Amended Complaint against Debtor is hereby dismissed in its entirety.

IT IS SO ORDERED.

Dated at Utica, New York
This 20th day of June, 2012

/s/DIANE DAVIS_____
DIANE DAVIS
United States Bankruptcy Judge